ALBERTO BACHMAN, demandante y recurrente, *v.* JUAN T. PEÑAGARÍCANO, ETC., demandado y recurrido; MANUEL MARTINÓ RUIDÍAZ, interventor.

*Número:* 80    *Resuelto:* 28 de diciembre de 1962

*Jorge Benítez Gautier,* abogado del peticionario; *Víctor M. Marchán, Nieves Agostini de Torres* y *Miguel R. Franquiz Ventura,* abogados del recurrido; *Amancio Arias Cestero,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Alberto Bachman arrendó a Manuel Martinó Ruidíaz un local comercial en la planta baja de un edificio de dos pisos sito en la calle Bolívar 416, esquina Ponce de León, Santurce, Puerto Rico. El arrendatario dedica dicho local al negocio de restaurante desde antes del año 1942.

A fines de 1959 el inquilino Martinó Ruidíaz se querelló ante la Administración de Estabilización Económica de cierto deterioro existente en la propiedad que ocupaba. En diciembre 8 de 1959 la Administración envió una notificación al casero y al inquilino requiriéndoles para que estuvieran presentes en una audiencia y en la práctica de una inspección que se celebraría en la propiedad el día 15 de diciembre de 1959 a las 11:00 A.M. "para determinar la naturaleza y cuantía de las reparaciones". A esta audiencia e inspección no compareció el casero. El día 23 del mismo mes y año la Administración expidió una "Orden para Efectuar Reparaciones" a un costo aproximado de $2,600 y en la cual se requería "reparar todo el techo de la estructura en la segunda planta para evitar que cuando llueva el agua se filtre hasta la primera planta . . .", dentro de un término de 15 días.

En 16 de febrero de 1960, la Administración expidió y notificó al casero una "Notificación de Procedimiento Pendiente (Rebaja)" en la cual se le informaba que la Administración se proponía rebajar el canon de $125.00 a $62.50 mensuales porque existía un deterioro sustancial en la vivienda. Se le concedieron 10 días para que radicara oposición y la evidencia documental que la sostuviera, a la propuesta rebaja.

Dos días después el casero contestó a la Administración en los siguientes términos:

"Muy señor mío:

Recibí notificación de procedimiento pendiente de la propiedad mía ocupada por el Sr. Manuel Martinó Ruidíaz. Ustedes especifican un canon de arrendamiento de $125.00 en el 1942 por todo el local. Sírvanse notar que en el 1942 el Sr. Martinó no ocupaba todo el espacio que hoy día ocupa. En ese año había un colmado-placita en el lado hacia San Juan que corresponde hoy a una puerta grande que está hoy condenada. Esa parte estaba alquilada entonces por $50. Dicha propiedad está pagando en contribuciones actualmente $729.95, de acuerdo con copia fotostática adjunta.

Su notificación solicitando el arreglo de la propiedad fue enviada en diciembre. Hicimos arreglos con la firma González & Vélez con oficinas en Ponce de León Núm. 400 Hato Rey para el arreglo de la misma, según carta certificada con acuse de recibo enviada al Sr. Martinó. Como saben ustedes hay que seguir una reglamentación con la Junta de Planes, esto es, someter planos para aprobación que como ustedes saben también toma su tiempo con esa Junta, por cuyo motivo no hubiese podido conseguir la aprobación y efectuar los arreglos en los 10 días estipulados por ustedes. Además fue necesario proceder al desahucio del inquilino que habitaba la planta alta, Sra. Ángela R. de Tudó, lo cual conseguimos recientemente. Espero pues se haga inefectiva la notificación de procedimiento pendiente.

"Atentamente,

"(Fdo.) A. Bachman."

En marzo 7 de 1960, el inquilino por conducto de su abogado Aurelio Ríos Méndez dirigió una comunicación escrita a la Administración solicitando (a) ". . . una vista rápida y efectiva de este caso para que se vea en sus méritos las alegaciones del casero", y (b) que se siguiera el procedimiento pendiente. Informaba además en esa comunicación que no era necesario que su cliente se mudara para que pudieran realizarse las reparaciones.

El día 17 del mismo mes y año se presentó por el casero una solicitud de aumento del alquiler a base de que desde

el año 1946–47 al 1960–61 había ocurrido un alza en las contribuciones de $568.25 anuales.

En 28 de marzo de 1960 volvió a escribir el abogado del inquilino a la Administración solicitando (a) investigación de las alegaciones del casero y del inquilino, y (b) vista pública para ofrecer prueba y testimonio.

En 1ro. de abril de 1960 el casero, por mediación de su abogado, dirige una comunicación al Administrador haciendo referencia a una carta escrita por el abogado del inquilino a su cliente, el casero. Le informaba en esa comunicación que el referido abogado había incurrido en algunos errores. Textualmente leen así los párrafos segundo y tercero:

"En dicha comunicación el compañero Ríos Méndez incurre en algunos errores (indudablemente por falta de información) y asume equivocadamente que el canon máximo de arrendamiento del local es $125.00 y no el de $150.00 mensuales.

"Para dilucidar toda esta cuestión estamos conformes con que se fije la vista pública solicitada por el Lcdo. Ríos Méndez, la cual sugerimos sea fijada para cualquier fecha conveniente de la segunda quincena del corriente mes de abril."

Con anterioridad, o sea, en 17 de marzo de 1960, el casero había escrito al inquilino informándole que había resuelto demoler totalmente el edificio para dedicar el solar a un negocio de estacionamiento de automóviles y le requería para que desalojara el inmueble en un plazo de seis meses.

En 29 de abril del mismo año la Administración dictó una resolución en la que hacía constar que del requerimiento de desalojo hecho por el casero al inquilino se desprendía que el propietario había decidido definitivamente no efectuar las mejoras y que procedía la rebaja propuesta. La parte dispositiva de esa resolución lee:

"En mérito de lo anterior y vistas las disposiciones de la sección 5-a(1) del Reglamento de Inquilinato de esta Administración aprobado en 12 de enero de 1959 se dispone la emisión de la orden final de rebaja por la propuesta pero tomando un

canon básico de $150.00 por mes. Oportunamente se emitirá la referida orden de rebaja."

En 12 de mayo de 1960, el casero solicitó la reconsideración de la referida resolución alegando:

"1.—Dicha resolución ha sido dictada sin conceder la oportunidad de una vista pública en este caso, la cual había sido solicitada tanto por el casero como por el inquilino.

"2—Porque el deterioro que ha motivado la resolución no existe en el local arrendado sino en otros que no son objeto de contienda.

"3—Porque la orden de rebaja que se anuncia en dicha resolución es arbitraria y contraria a lo especificado en la ley por exceder dicha rebaja del valor rental perdido por el inmueble con motivo del deterioro existente."

Terminaba la moción de reconsideración con la súplica de que se celebrara una vista pública para discutir los puntos señalados en dicha moción.

En 19 de mayo la Administración dió un "no ha lugar" a la moción de reconsideración y el día 26 del mismo mes dictó la orden final rebajando el canon de $150.00 a $75.00 mensuales.

Recurrió entonces el casero en revisión ante el Tribunal Superior alegando que la orden de rebaja era nula porque (a) al dictarla la Administración hizo caso omiso de la petición de aumento de alquiler hecha por el casero a base del aumento de las contribuciones y la cual estaba aun pendiente de resolverse; (2) la rebaja decretada excedía del valor rental perdido por el local arrendado con motivo del deterioro existente; (3) no existía deterioro en el local arrendado sino en otros que no eran objeto de contienda, y (4) dicha orden de rebaja se dictó sin haberse celebrado una vista pública a pesar de que el inquilino y el casero la habían solicitado.

El Tribunal Superior a base de las constancias en los autos administrativos del caso elevados por la Administra-

ción dictó sentencia confirmando la resolución recurrida por el único fundamento de que el casero recurrente había renunciado su derecho de audiencia al no solicitarla cuando objetó por su carta de 18 de febrero de 1960 la propuesta rebaja del alquiler máximo.

Expedimos un auto de *certiorari* para revisar dicha sentencia.

De acuerdo con el Art. 6 de la "Ley de Alquileres Razonables" (17 L.P.R.A. sec. 186), el Administrador tiene, entre otras, la facultad para decretar rebajas en el alquiler por deterioro de la vivienda o del edificio arrendado. El mismo Art. 6 dispone además, "El Administrador fijará reglas de procedimiento para la presentación, audiencia y resolución de las solicitudes de rebaja o aumento en el alquiler que radicaren inquilinos o propietarios, según fuere el caso; Disponiéndose, que el Administrador no dictará resolución en ninguna solicitud de aumento o rebaja de alquiler hasta después de haber citado a las partes para que aleguen lo que a su derecho convenga."

El Art. 10 de la misma ley dispone que si el arrendador no hiciere las reparaciones necesarias ni mantuviere en funcionamiento los servicios después de haber sido requerido para ello por escrito, el Administrador citará a audiencia al propietario y al inquilino para determinar la necesidad de las reparaciones y una vez comprobada aquélla, fijar el importe razonable de las mismas y ordenará al propietario que las lleve a cabo y si no las hiciere en el término fijado por el Administrador, ordenará al inquilino para que las haga y deduzca su importe del alquiler en la forma que a ese efecto determine el Administrador.

Por otro lado, el "Reglamento de Inquilinato" dispone en el inciso "C" de su Sec. 13 que si el inquilino informare a la Administración que no está en condiciones económicas de hacer las reparaciones autorizadas, se procederá a rebajar la renta bajo la Sec. 12-b del Reglamento que a su

vez dispone que el Administrador podrá rebajar el alquiler por deterioro cuando se emita una orden de reparaciones bajo la Sec. 13 *c* y *d* del Reglamento.

La Sec. 14 de dicho Reglamento dispone: "El Administrador no hará determinación final de rebaja o alza de alquileres, fijación o denegatoria de solicitud de reajustes sin antes notificar a las partes la acción que se propone. Éstas podrán objetar la propuesta, por escrito, dentro del término señalado en la misma." Y el apartado "a" de esa misma Sec. 14 dispone: "Si la parte afectada lo solicitare y el Administrador lo estimare necesario, se señalará una vista para oir los méritos de las objeciones."

El Administrador en este caso citó al casero y al inquilino para determinar la necesidad de las reparaciones y su costo. A la propuesta rebaja del alquiler el casero contestó mediante carta de 18 de febrero de 1960, transcrita anteriormente. Ya en esa carta se planteaba la cuestión de cuál era el canon legal de arrendamiento y además la cuestión del aumento en contribuciones impuestas sobre la propiedad. El inquilino había solicitado una vista del caso y también lo había hecho el casero por conducto de su abogado. El Administrador entendió, a nuestro juicio erróneamente, que lo único que interesaba discutir el casero en la vista era la cuestión relacionada con el canon básico del arrendamiento. Y es errónea tal apreciación porque en la comunicación de 1ro. de abril de 1960 lo que el casero informaba al Administrador era que estaba conforme con la celebración de la vista para "dilucidar toda esta cuestión". Posteriormente y antes de la orden final de rebaja del canon, el casero había hecho ciertos planteamientos que aconsejaban la necesidad de la celebración de dicha vista. Claramente aparecen esos planteamientos en la moción de reconsideración del casero a la resolución del Administrador disponiendo la emisión de una orden final de rebaja del canon.

Nada hemos encontrado en la Ley ni en el Reglamento de Inquilinato indicativo de que cuando el casero contesta una Notificación de Procedimiento Pendiente (Rebaja) exponiendo objeciones, renuncia a una vista pública si no la solicita en ese momento. Tanto la Ley como el Reglamento, mas bien favorecen la celebración de tal vista y aunque en el Reglamento se concede discreción al Administrador para denegarla, si no creyere que fuere necesaria, en muchos casos la índole de las objeciones a la propuesta rebaja puede hacer imperativa la celebración de la vista. ■

De todos modos, no podemos aceptar el criterio del Tribunal Superior en cuanto a que en este caso el casero renunció a la vista pública. Si bien es cierto que aquí el propietario requirió al inquilino para que desalojara el local arrendado porque se disponía a demolerlo totalmente, lo que de por sí implicaba que no se harían las reparaciones exigidas, aun así procedía que el Administrador fijara el canon de arrendamiento que regiría hasta que el inquilino desocupara el local, haciendo la rebaja razonable que correspondiera después de oir y considerar las objeciones del propietario.

*Siendo errónea la sentencia dictada por el Tribunal Superior, se dejará la misma sin efecto y se devolverá el caso para ulteriores procedimientos.*